IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Irving Brown, III, | ) | Case No.: 1:20-182-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Andrew M. Saul, Commissioner of Social Security Administration, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges ("Report and Recommendation") pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Irving Brown, III ("Plaintiff" or "Brown"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Magistrate Judge issued her Report and Recommendation on October 21, 2020, concluding that Brown did not show that the Commissioner's findings of facts were not supported by the substantial evidence and the Commissioner applied the proper legal standards, and therefore, recommending that the Commissioner's decision be affirmed. (DE 21.)

On October 30, 2020, Brown filed objections to the Report and Recommendation. (DE 22.) Brown's objection alleges that the Magistrate did not properly consider the factors of determining an intellectual disorder set forth in Listing 12.05B. Further, "Brown specifically objects to the Magistrate's finding that his extremely low level of academic functioning was 'not among the evidence to specifically be considered in determining whether an individual has

1

significant deficits in adaptive functioning under the revised listing.'" (DE 21, p. 41.) Brown also contends the Magistrate did not afford "great weight" to Dr. Cleaveland's opinion who had stated that "Mr. Brown is able to concentrate and persist on simple tasks, **at least with one-on-one supervision.**" (DE 9-11, Tr. p. 669.) Finally, Brown objects to the Magistrate's failure to account for contradictory evidence to support Brown's impairments in combination related to his physical limitations to a light or sedentary job and his mental and cognitive impairments, which in combination, prohibit Brown from working full time. (DE 22.)

Thereafter, on November 12, 2020, the Commissioner filed a response to Brown's objections. (DE 23.) Having carefully considered the parties' submissions and the applicable law, the Court adopts the Report and Recommendation and affirms the Commissioner.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. (DE 20.) However, as a brief background relating to the objections raised by Brown, the Court provides this summary. Plaintiff was 49 years old at the time of the October 5, 2018 hearing. (DE 9-3.) He attended school to the tenth grade. His past relevant work ("PRW") was as a dishwasher. He alleges he has been unable to work since June 1, 1999. (DE 9-7, Tr. p. 385, 393.)

Plaintiff has an extensive history of a mild intellectual disability, to include functioning on a sixth-grade level in reading and spelling and a third grade level in math, although Plaintiff's social functioning has been considered age-appropriate. (DE 9-10, Tr. p. 557.) Brown has a history of pain in his right knee, which has shown arthritic change in X-rays. (DE 9-10, Tr. p. 561.) On April 30, 2013, an MRI of Plaintiff's right knee showed chronic medial meniscal insufficiency, probable fraying and degeneration of the lateral meniscus, areas of full thickness cartilage loss and

ulceration in the medial and lateral compartments, and focal semi-membranous bursitis. (DE 9-10, Tr. p. 608–09.) Plaintiff has also been diagnosed with depression, anxiety, mood swings, and suicidal ideation and attempts. (DE 9-10, Tr. p. 600.)

On May 3, 2013, state agency medical consultant Angela Saito, M.D. ("Dr. Saito"), reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC") as follows: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. (DE 9-4, Tr. pp. 100–02, 115–17.)

Plaintiff presented to John Custer, M.D. ("Dr. Custer"), for a consultative exam on October 21, 2013. (DE 9-10, Tr. pp. 633–36.) Dr. Custer noted Plaintiff was a poor historian who appeared to provide intentionally brief and vague answers. (DE 9-10, Tr. p. 633.) Plaintiff reported an injury to his right leg caused him to be unable to maintain steady employment. (Id.) Dr. Custer administered the Mini-Mental State Exam ("MMSE"), and Plaintiff answered 26 of 30 questions correctly. Dr. Custer assessed possible malingering and indicated a need to rule out substance abuse/substance-induced psychotic disorder and psychotic disorder, NOS. (Id.) He stated Plaintiff's knee condition appeared to be his main disability and recommended it be further evaluated. (Id.) He indicated that if Plaintiff were to be approved for benefits, he should likely have a representative payee given his history of substance abuse and admitted history of failing to properly manage money. (Id.)

On December 5, 2013, state agency psychological consultant Michael Neboschick, Ph.D. ("Dr. Neboschick"), reviewed the record and considered Listings 12.03 for schizophrenia, paranoia, and other psychotic disorders, 12.04 for affective disorders, 12.06 for anxiety-related

disorders, 12.08 for personality disorders, and 12.09 for substance adduction disorders. (DE 9-4, Tr. pp. 98–99, 113–14.) He assessed Plaintiff as having no repeated episodes of decompensation, mild restriction of activities of daily living ("ADLs"), moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Id.) Dr. Neboschick completed a mental RFC assessment, indicating Plaintiff was moderately limited with respect to the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting. (DE 9-4, Tr. pp. 102–04, 117–19.)

Plaintiff presented to Gene Sausser, Ph.D. ("Dr. Sausser"), for a consultative exam on May 6, 2014. (DE 9-10, Tr. pp. 637–41.) He reported an inability to work due to leg pain and mental problems that included bipolar disorder and schizophrenia. A second state agency psychological consultant, Kathleen Broughan, M.D. ("Dr. Broughan"), reviewed the record, considered the listings, and affirmed Dr. Neboschick's opinion on May 27, 2014. (Compare DE 9-4, Tr. pp. 98–99, 113–14 and 102–04, 117–19, with Tr. pp. 132–34, 148–50 and 137–39, 153–55.) On May 29, 2014, state agency medical consultant Cleve Hudson, M.D. ("Dr. Hudson"), reviewed the record and provided the following physical RFC assessment: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about four hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally balance, stoop, kneel,

4

crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. (DE 9-4, Tr. pp. 135–37, 151–53.) She indicated a GAF score of 50 and assessed bipolar disorder with psychotic features and a need to rule out antisocial personality disorder. (DE 9-11, Tr. p. 691.) She indicated Plaintiff "appear[ed] to change his story depending on the circumstance." (Id.) She scheduled Plaintiff for follow up visits with a psychiatrist and a case manager. (DE 9-11, Tr. p. 692.)

Plaintiff presented to Bonnie Cleaveland, Ph.D. ("Dr. Cleaveland"), for a consultative exam on November 11, 2017. (DE 9-11, Tr. pp. 665–70.) He reported problems with his right leg and indicated he had sustained a significant head injury in his thirties, but denied that it caused seizures or cognitive problems. (DE 9-11, Tr. p. 666.) He reported episodes of depression during which he preferred to be socially isolated and had increased sleep and appetite. (Id.) He denied using drugs and indicated he used alcohol infrequently. (Id.) He stated he lived in his parents' home and performed basic chores to include sweeping, mopping, cleaning bathrooms, washing and drying laundry, washing dishes, and folding clothes, but no yardwork. (DE 9-11, Tr. p. 667.) He admitted he could cook, but did not enjoy cooking. (Id.) He indicated he attended church with his family and worked as a dishwasher for five hours a day on two days a week to satisfy his child support obligation. (Id.) He said working in his job increased his leg pain, but he was able to pace himself and keep going until the end of his shift with use of muscle relaxers. (Id.) He indicated he had never been fired from a job and got along well with his coworkers and boss. (Id.) Dr. Cleaveland noted Plaintiff arrived without an assistive device and walked with a normal gait. (DE 9-11, Tr. p. 665.) She described Plaintiff as having normal speech and coherent and goal-directed thoughts, demonstrating no evidence of thought disorder or perceptual disturbance, and showing mildly depressed affect. (Id.) She indicated Plaintiff was cooperative during the exam and

considered test results to be valid. (Id.)  Dr. Cleaveland indicated Plaintiff's social functioning was mildly impaired due to depression. (DE 9-11, Tr. p. 669.)   She stated Plaintiff was independent in ADLs and could manage funds. (Id.)  She opined that Plaintiff could concentrate and persist on simple tasks "at least with one-on-one supervision," but was "not likely to be capable of complex tasks." (Id.)  She explained that Plaintiff's symptoms did not clearly meet a specific depressive disorder. (DE 9-11, Tr. p. 670.)  Despite Plaintiff's extremely low full-scale IQ, Dr. Cleaveland considered his functioning to be in the borderline range given his work history, achievement test results, and ADLs. (Id.)

## **LEGAL STANDARD**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  Mathews v. Weber, 423 U.S. 261 (1976).  The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge.  28 U.S.C. § 636(b)(l).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the report and recommendation only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); see also Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 205(g) of the Act provides, "[t]he findings of the Secretary

as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[1] 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

## DISCUSSION

**I.      Requirements of Listing 12.05B**

Brown objects to the Report and Recommendation and alleges it does not properly consider the factors of determining an intellectual disorder set forth in Listing 12.05B, which requires consideration of the following:

---

[1] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

> The fact that you have engaged in work activity, or that you work intermittently or steadily in a job commensurate with your abilities, will not always mean that you do not have deficits in adaptive functioning as required by 12.05B2. When you have engaged in work activity, we need complete information about the work, and about your functioning in the work activity and work setting, before we reach any conclusions about your adaptive functioning. We will consider all factors involved in your work history before concluding whether your impairment satisfies the criteria for intellectual disorder under 12.05B. We will consider your prior and current work history, if any, and various other factors influencing how you function. For example, we consider whether the work was in a supported setting, whether you required more supervision than other employees, how you job duties compared to others in the same job, how much time it took you to learn the job duties, and the reason the work ended, if applicable.

20 CFR Pt. 404. Subpt. P. App'x 1, § 12.00(H)(3)(e).

The Listings are a regulatory device used to streamline the decision-making process by identifying those impairments that would prevent an adult, regardless of his age, education, or work experience, from performing "*any*" gainful activity, not just "substantial" gainful activity. See 20 C.F.R. §§ 404.1525(a), 416.925(a) (stating that the purpose of the listings is to describe impairments "severe enough to prevent a person from doing *any* gainful activity") (emphasis added); Sullivan v. Zebley, 493 U.S. 521, 530, 532 (1990). Thus, the standard for meeting a listed impairment is higher than the standard for proving disability at steps four and five of the sequential evaluation process. Zebley, 493 at 532. The reason for the difference between the Listings' level of severity and the statutory standard of disability is that the Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. Id. at 532.

The claimant bears the burden of production and proof that he meets a Listing. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Zebley, 493 U.S. at 530. Meeting only

some criteria for a listing "no matter how severely, does not qualify." Id. Here, the ALJ considered Listing 12.05B, but found that Plaintiff did not satisfy its requirements.[2] (DE 9-2, Tr. p. 16-20.) To satisfy Listing 12.05B starting January 17, 2017, a claimant must have: (1) a full scale IQ of 70 or below; (2) significant deficits in adaptive functioning currently manifested by an extreme limitation of one or marked limitation of two of the following areas of mental functioning understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself; and (3) evidence about current intellectual and adaptive functioning and the history of the disorder demonstrating or supporting the conclusion that the disorder began prior to age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B. Here, while Plaintiff had a full scale IQ score of 70 or below, the ALJ found that Plaintiff lacked significant deficits in adaptive functioning currently manifested by an extreme limitation of one or marked limitation of two of the relevant areas of mental functioning as Plaintiff had mild-to-moderate limitations in those areas instead (DE 9-2, Tr. pp. 16-20.) Thus, the ALJ found that Plaintiff did not satisfy the requirements of Listing 12.05B (DE 9-2, Tr. p. 20,) The Magistrate Judge correctly found that the ALJ satisfied the substantial evidence standard, which is "not high," in rendering his determination (See DE 21, pp. 37-44; see also DE 20, pp. 10-15, referencing the substantial evidence support of the ALJ's determination). See generally Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining that the standard for substantial evidentiary sufficiency "is not high.").

---

[2]     Listing 12.05 was substantially rewritten effective January 17, 2017. See Revised Med. Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66150, 66156 (Sept. 26, 2016) (noting January 17, 2017, effective date for revised rules). As the ALJ's decision is dated December 26, 2018, the ALJ's decision should be reviewed based on the new rules. Id. ("We will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions").

In his objections, Plaintiff attempts to undermine the ALJ's decision in five ways. However, his contentions do not require remand, therefore rendering his objections futile. First, Plaintiff criticizes the ALJ for not correctly considering his work history when evaluating whether Plaintiff had a marked or extreme limitation in the requisite areas of mental functioning (DE 22, pp. 2-3). In particular, Plaintiff argues that the ALJ ignored his earnings history, ignored that all of his jobs were "very simple and unskilled," and failed to consider other factors as to how Plaintiff functioned at those jobs, such as whether his work was in a supported setting, whether he required more supervision than other employees, how his job duties compared to others in the same job, how much time it took him to learn the job duties, and the reason the work ended. To the contrary, as to Plaintiff's earnings, the Magistrate explained: [The ALJ] noted that Plaintiff had engaged in substantial gainful activity during multiple quarters. (DE 9-2, Tr. p. 19.) This conclusion is supported by a record that shows Plaintiff worked for Charleston County Government from March 2011 through March 2012, earning over $17,000 during that period. (DE 21, p. 42.) In terms of Plaintiff's past relevant work, the ALJ noted that his past work as a landscape laborer was not "very simple" as Plaintiff states. (DE 9-2, Tr. p. 26). Further, contrary to Plaintiff's argument that all of his past jobs were "very simple and unskilled" (ECF No. 22 at 2), he also previously held a job as a groundskeeper, which the vocational expert classified as semi-skilled, but the ALJ, to Plaintiff's benefit, did not classify as past relevant work at all. (DE 9-2, Tr. pp. 26, 82.)

Plaintiff also points to no evidence that his previous work was influenced by other factors that the ALJ ignored, such as that he worked in a supported setting, that he required more supervision than other employees, that job duties were different than others in the same job, or that it took him more time to learn his job duties. Nor did Plaintiff claim at the administrative level that he stopped working due to his mental condition. As the Magistrate Judge noted, the ALJ

stated the following: At the most recent hearing, the claimant testified he stopped working as a dishwasher [a job he performed after his alleged disability onset] after about 10 months because he was unable to do the job physically. The undersigned asked him several times whether or not he had any problems understanding instructions given to perform that job, and he repeatedly indicated that he did not. (DE 21, Tr. pp. 19-20, 40-41.) Indeed, Plaintiff testified that he stopped all of his previous laboring jobs due to physical problems, not because he couldn't understand what was required (DE 9-3, Tr. p. 41, "Q[.] In the past, you also had other laboring jobs. You stop doing those because of physical problems? A[.] Yes, sir Q[.] Not because you couldn't understand what was required? A[.] Just because my leg wouldn't allow me to do it."). See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition"). Thus, Plaintiff's work history-based criticisms are without merit.

Second, Plaintiff criticizes the ALJ for finding that Plaintiff had a moderate limitation in interacting with others because the ALJ stated that "the claimant has reported he sometimes goes to restaurants with his family and attends church," by arguing that he only went to church "when I'm able to" and implying that he did not go out to eat at restaurants (DE 22, p. 3; 9-8, Tr. p. 463; DE 9-11, Tr. pp. 638, 667). This criticism however ignores that the ALJ explicitly acknowledged that Plaintiff only "sometimes" attends church (DE 9-2, Tr. p. 17) and that Plaintiff told a consultative examiner that he went "out to eat with his family" (DE 9-11, Tr. p. 638). Further, as the Magistrate Judge noted, the ALJ also stated the following:

> None of the examiners has documented that the claimant has significant difficulty interacting or relating. In fact, they generally noted the claimant was cooperative and exhibited normal eye contact and speech. (Exhibit 7F). In November 2017, the claimant stated he attends church, works 2 days per week as a dishwasher, and has never been fired from a job due to difficulty getting along with others. He reported he got along well with coworkers and supervisors. (Exhibit 11F).

11

(DE 21, p. 37; 9-2, Tr. p. 17.) Then, the ALJ still found that Plaintiff had a limitation in interacting with others, it was simply moderate, not marked or extreme. In short, Plaintiff's contention does not require remand.

Third, Plaintiff relies on a case from 2015 for an analysis on what constitutes deficits in adaptive functioning (DE 22, p. 4); however, the case Plaintiff relies upon involved a prior version of Listing 12.05. As the Magistrate Judge explained: "The prior version of Listing 12.05 did not provide explicit guidance on how to assess adaptive functioning. In the absence of such guidance, the courts were left to interpret what constituted deficits in adaptive functioning." (DE 21, p. 35.) The version of Listing 12.05 applicable here explicitly defines deficits of adaptive functioning as being currently manifested by an extreme limitation of one or marked limitation of two of the following areas of mental functioning understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B. The Magistrate Judge also correctly explained that the introductory language of the current listing explicitly acknowledges that the ALJ "is to consider all the claimant's activities and performance of those activities, and his conclusion about the claimant's adaptive functioning should 'rest on whether [the claimant does his] daily activities independently, appropriately, effectively, and on a sustained basis.'" (DE 21, p. 36 citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(H)(3)(d).) The introductory language also states: "You use the same four areas of mental functioning in daily activities at home and in the community that you would use to function at work" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(3). Thus, it was appropriate for the ALJ to consider Plaintiff's extensive daily activities in addition to other factors in assessing whether he had sufficient deficits in adaptive functioning to satisfy the Listing.

Fourth, Plaintiff objects to the Magistrate Judge's finding that "achievement test scores are not among the evidence to specifically be considered in determining whether an individual has significant deficits in adaptive functioning under the revised listing." (DE 22, p. 4 citing DE 21 at 41.) Plaintiff contends that the introductory language to the Listing states that evidence from your adaptive functioning may come from "School records, if you were in school recently." (DE 22, p. 4.) Nevertheless, Plaintiff has not presented evidence that he was "in school recently." (DE 9-7, Tr. p. 385.) Instead, he stopped school in 1986.³ (DE 8, Tr. p. 445.) As the Magistrate Judge explained, rather than consider such evidence, the regulatory language provides that the ALJ's "assessment of deficits in adaptive functioning should be based on 'your typical functioning at home and in the community' and should consider ADLs and prior work history." (DE 21, p. 41 citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(H)(3).) Thus, this argument fails.

Fifth and finally, Plaintiff argues "as to the 'great weight' given to Dr. Cleaveland's opinion," "the ALJ absolutely failed to deal with the part of that opinion which stated that 'Mr. Brown is able to concentrate and persist on simple tasks, at least with one-on-one supervision.'" (DE 22, p. 6.) But the ALJ permissibly assigned little weight to that portion of Dr. Cleaveland's opinion because it was inconsistent with Plaintiff's post-alleged onset date work activity and his activities of daily living (DE 9-2, Tr. p. 26, stating "[w]hile Dr. Cleaveland indicated the claimant

---

³   Furthermore, Plaintiff worked a semiskilled job and unskilled jobs despite his reading level (which the ALJ found to be the sixth grade level, not third grade.) (DE 9-2, Tr. p. 27.) The ALJ ultimately found he could perform unskilled jobs (DE 9-2, Tr. pp. 20, 27). Indeed, the ALJ stated "although his FSIQ is in the extremely low range, [the claimant's] work history, *achievement test results*, and activities of daily living indicate functioning in the borderline range in ultimately determining Plaintiff could perform a range of unskilled work." (DE 9-2, Tr. p. 25) (emphasis added.) In terms of the specific evidence Plaintiff contends indicates that he cannot work, Plaintiff testified that he stopped working his previous jobs due to physical problems, not because he could not understand or mentally do the jobs. (DE 9-2, Tr. p. 41.)

13

may require one-on-one supervision, that opinion is not supported by the claimant's post-alleged onset date work activity or the extent of his daily activities. (Exhibit 1lF). Accordingly, little weight has been given to that portion of Dr. Cleaveland's opinion.") This was permissible under the controlling regulations. See 20 C.F.R. §§ 404.1527, 416.927 (allowing an ALJ to discount a medical opinion that is inconsistent with other record evidence). In any event, as Plaintiff worked part-time after his alleged disability onset date, and the purpose of the listings is to describe impairments "severe enough to prevent a person from doing *any* gainful activity," 20 C.F.R. §§ 404.1525(a), 416.925(a), Plaintiff has not explained how Dr. Cleaveland's opinion precludes him from performing any gainful activity, to satisfy a Listing. Thus, remand is not required.

Accordingly, the Magistrate Judge properly found that the ALJ relied on substantial evidence in support of his finding that Plaintiff did not satisfy the requirements of Listing 12.05B.

## II.    Combined Effects of Plaintiff's Impairments

Plaintiff next contends that the ALJ did not consider the combined effects of his impairments (DE 22, pp. 6-8.) However, the ALJ made clear that he considered "the combined effects of the claimant's alleged impairments, both severe and non-severe, on the claimant's ability to work," including when considering Listing 12.05 (DE 9-2, Tr. pp. 16-20.) The Magistrate Judge noted that absent evidence to the contrary, we should take the ALJ at his word (DE 21 at 46 citing Reid v. Comm'r Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) ("the Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word")). The Magistrate Judge then addressed how the ALJ specifically explained how he accounted for both Plaintiff's mental and physical impairments. (DE 21, pp. 46-47). Furthermore, the Magistrate Judge reported that her review of the record shows that the "the ALJ considered the combined effect of Plaintiff's impairments" (Id.)

14

Nevertheless, Plaintiff lodges three main complaints, but none require remand. First, Plaintiff repeats his argument that the ALJ ignored Dr. Cleaveland's opinion that he required one-on-one supervision. (DE 22, p. 6.) But as discussed previously, the ALJ explicitly discounted that aspect of Dr. Cleaveland's opinion stating: "While Dr. Cleaveland indicated the claimant may require one-on-one supervision, that opinion is not supported by the claimant's post-alleged onset date work activity or the extent of his daily activities. (Exhibit 11F)" (DE 9-2, Tr. p. 26.)

Second, Plaintiff focuses on his physical condition and argues that because the ALJ limited him to standing and/or walking 4 hours in an 8 hour day, the ALJ limited him to sedentary work and special scrutiny is required as a result (DE 22, p. 7.) However, standing and/or walking 4 hours in an 8-hour day is a *reduced range* of light work, not sedentary work; thus, the remainder of Plaintiff's argument as to sedentary work need not be addressed (DE 9-2, Tr. p. 20).

Third, Plaintiff argues that the ALJ failed to consider his complaints of knee pain as well as certain medical records he believes support his claims. (DE 22, pp. 7-8.) To the contrary, the ALJ devoted several pages of his decision detailing Plaintiff's physical allegations treatment, but ultimately he found Plaintiff could perform a reduced range of light work (DE 9-2, Tr. pp. 20-26.) The Report and Recommendation noted, the ALJ "indicated he considered Plaintiff's "right knee degenerative joint disease and subjective reports of pain in limiting the amount he can lift, carry, stand, walk and perform postural activities." (DE 21, p. 47; DE 9-2, Tr. p. 26.) Plaintiff's reliance on other evidence in the record that supposedly shows he has physical issues does not rehabilitate his claim because when "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the...ALJ[ ]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Therefore, the Magistrate Judge properly found that the ALJ

15

considered the combined effect of Plaintiff's impairments, and Plaintiff's objections are overruled, and the Court affirms the Commissioner's decision.

## **CONCLUSION**

For the foregoing reasons, the Court adopts the Report and Recommendation and affirms the Commissioner.

**AND IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

July 20, 2021
Greenville, South Carolina